**STATE of Iowa, Appellee,**

v.

**Robert CAMPBELL, Appellant.**

No. 97–1117.

Supreme Court of Iowa.

Jan. 21, 1999.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Robert P. Ewald, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant County Attorney, for appellee.

Considered by LARSON, P.J., and LAVORATO, NEUMAN, SNELL, and CADY, JJ.

NEUMAN, Justice.

In *State v. Walker*, 473 N.W.2d 221, 223 (Iowa App.1991), our court of appeals held that, just as one driving episode might logically give rise to separate charges for speeding and running a red light, so also could one driving incident legally support convictions for one driving-while-barred violation and one driving-under-suspension charge (DUS). Appellant Robert Campbell—whose driving record is literally one hundred times worse than the record considered in *Walker*— claims the *Walker* rationale does not apply when multiple DUS offenses are at issue, even if the suspensions arise from different parts of the motor vehicle code. The State counters that when a defendant, like Campbell, has accumulated multiple suspensions for multiple unpaid fines, each single driving episode may yield multiple DUS offenses. Upon considering the arguments presented, we choose a middle course, influenced by *Walker's* reasoning. Accordingly, we reverse and remand for further proceedings.

■ I. This appeal reaches us on a claim of ineffective assistance of counsel. Having been charged in eight trial informations with 141 misdemeanor offenses, Campbell pled guilty to eighty-four charges for which he was sentenced to seven consecutive one-year jail terms, one consecutive two-year prison term, and seventy-two fines of $250 each. He now contends that his trial counsel's failure to challenge factual basis defects in the guilty pleas deprived him of the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. *See State v. Brooks*, 555 N.W.2d 446, 448 (Iowa 1996) (finding failure of essential duty "if defense counsel allows the defendant to plead guilty to a charge for which no factual basis exists and thereafter fails to file a motion in arrest of judgment challenging the plea"); *State v. Hack*, 545 N.W.2d 262, 263 (Iowa 1996) (same); *see also State v. Allison*, 576 N.W.2d 371, 374 (Iowa 1998) (observing "defense counsel can be ineffective for failing to challenge whether a defendant was properly charged even when it has not been previously determined whether a statute is applicable to a specific type of offense"). To prevail on his claim, Campbell must prove (1) that counsel failed to perform an essential duty and (2) prejudice resulted. *State v. Carter*, 582 N.W.2d 164, 165 (Iowa 1998).

■ The State contends that the error-preservation exception recognized in *Carter*, *Brooks*, and *Hack* does not apply here because the assigned error is, if anything, a merger-of-sentences problem, not a factual-basis problem. We reject the State's contention. Irrespective of any negative impact on sentencing, acceptance of a guilty plea premised on circumstances for which the law imposes no guilt necessarily implicates a factual-basis issue. We thus turn to the merits of the appeal, addressing the issues as framed by Campbell. Our review is de novo. *See Brooks*, 555 N.W.2d at 448 (standard of review for alleged constitutional deprivation).

■ II. The record reveals that Campbell's eighty-four guilty pleas stemmed from only eight traffic stops during October 1995 through August 1996. The parties' briefs detail the charges filed for each stop but, for the sake of brevity, we will cite the particulars of only one episode to illustrate the controversy before us. For driving on April 5, 1996, Campbell was charged with thirteen DUS offenses based on three suspensions for previously unpaid fines, nine suspensions for failure to post proof of financial responsibility, and one suspension pertaining to his habitual violator status. The other trial informations reflect similarly accumulated suspensions.

Campbell ultimately entered forty-four pleas to driving under suspension in violation of the financial responsibility statute, Iowa Code section 321A.32 (1995); thirty pleas to DUS for failure to pay fines in violation of Iowa Code sections 321.210A and 321.218 (Supp.1995); two pleas to driving while barred in violation of the habitual traffic offender statutes, sections 321.560 and 321.561; and one plea to DUS in violation of the habitual violator statutes, sections 321.210 and 321.218. He also pleaded guilty to three counts of interference with official acts under Iowa Code section 719.1; two counts of possession of marijuana pursuant to Iowa Code section 124.401(3); and one

count each of simple assault, sections 708.1(1) and 708.2(4), and disorderly conduct in violation of Iowa Code section 723.4.

Only the driving-under-suspension pleas are challenged on appeal. The crux of Campbell's argument is that each separate driving episode may yield but one DUS offense. Conceding that a person's license may be suspended for various reasons, *e.g.*, nonpayment of fines or failure to post proof of financial responsibility, he nevertheless argues that for each driving instance there exists only one crime of driving under suspension. This is so, he submits, no matter how many times and how many ways the license has been suspended. *See, e.g., State v. Williams*, 305 N.W.2d 428, 431 (Iowa 1981) (drug trafficking statute provides "several means of its violation," not basis for separate offenses); *State v. Fuhrmann*, 257 N.W.2d 619, 624 (Iowa 1977) ("There is but one crime called murder ... committed in several ways."). Applying this reasoning, Campbell contends that each traffic stop could only factually support one guilty plea to DUS. We note this was the result reached in an Ohio case upon which Campbell relies, *State v. Mergy*, 105 Ohio App.3d 646, 664 N.E.2d 1009, 1012 (1995).

The State views the case quite differently. For each separate traffic stop, it argues, a defendant may be charged with—and ultimately convicted of—separate charges for every suspension then outstanding. This multiple charging, it argues, serves the public interest by treating a person with ten suspensions for ten unpaid fines more harshly than a person under suspension for only one unpaid fine. The State's argument, however, does not squarely address the fact that a driver has only one license available for suspension. *See* Iowa Code § 321.212(2) (requiring licensee to surrender license upon suspension and directing department to retain it). Nor does it address the legislative scheme of enhanced administrative and criminal penalties provided by the habitual-offender and driving-while-barred statutes. *See* Iowa Code §§ 321.555(1)(c) (defining habitual offender as person who drives while license suspended), 321.560 (barring habitual offender from driving for up to six years),

321.561 (habitual offender who drives during barment may be convicted of aggravated misdemeanor); *see also* Iowa Code § 321.218(4) (authorizing administrative extension of license suspension for person who drives while license suspended).

We think our court of appeals got it right in *State v. Walker*. There the defendant—barred from driving as an habitual traffic offender—was observed driving and thus charged with driving while his license was barred, *see* Iowa Code § 321.560, and driving while suspended for failure to post proof of financial responsibility, *see* Iowa Code § 321A.32. *Walker*, 473 N.W.2d at 222. The defendant claimed convictions under both charges would constitute double punishment in violation of the Double Jeopardy Clause, and the trial court agreed. *Id.* at 222–23. The court of appeals reversed, concluding the factual elements of the two charges were dissimilar. The court reasoned:

> Walker makes the only argument that he can: that the evidence relating to his being barred or suspended is the same evidence. Admittedly, the evidence may be superficially of the same type, but the facts revealed by the evidence in support of each charge clearly differ. The State must do more than show that the accused did not have a license. Rather like speeding through a red light, Walker committed two distinguishable offenses when he drove his car onto a public road—one against the motor vehicle code and one against the financial responsibility law. We conclude that this was a single prosecution for multiple offenses which did not violate the prohibition against double jeopardy.

*Id.* at 223.

Turning to the controversy before us, Campbell chooses to frame the error as a plea proceeding without a factual basis, thus claiming *Walker's* double-jeopardy analysis has no application. We fail to see the distinction. In either case the question is whether the legislature intended punishment for multiple—but distinct—violations of statutory provisions stemming from one act of driving. *See id.; see also State v. Perez*, 563 N.W.2d 625, 627–28 (Iowa 1997) (legislature defines crimes and fixes punishments and

may authorize cumulative punishment for one incident under two statutes). In other words, does a factual basis exist to support multiple guilty pleas for DUS in violation of the *same* statute for only one driving episode? We are convinced it cannot.

Strong clues in the pertinent statutory language lead us to this conclusion. Section 321A.32, for example, penalizes DUS for failure to post proof of financial responsibility as "a" serious misdemeanor, *not* "a serious misdemeanor for every suspension then outstanding." So also section 321.218(1), which makes it a serious misdemeanor to drive while one's license or operating privileges are suspended under chapter 321, ties the offense to operation of the vehicle, not the number of times the department has acted to extend the suspension in accordance with section 321.218(4). The crime, in each case, is driving while the license is suspended under a particular statute. Why or how many times the license has been suspended, under each particular statute, is essentially irrelevant. Each violation of a separate Code section, however, logically constitutes a separate crime. *See Walker*, 473 N.W.2d at 224.

We thus hold that, irrespective of the number thereof, a series of suspensions based on the same statute may only give rise to one conviction for a single driving episode. Multiple convictions per driving episode can only be based on multiple suspensions if the suspensions have been imposed under different statutes. So, for example, if Campbell drove in violation of the statute authorizing suspension for failure to pay fines as well as the statute penalizing failure to post proof of financial responsibility as well as in violation of his habitual violator status, then he could be convicted of three separate crimes. But no factual basis existed for entry of multiple pleas to DUS for one driving episode where the charges merely reflect the original suspension, and extensions thereof, for violation of the same Code section. The excessive charges must be dismissed. We therefore reverse and remand for further proceedings consistent with this opinion.

III. As already noted, Campbell also entered guilty pleas to two counts of marijuana possession. He urges on appeal, and the State concedes, that the court erred when it imposed two one-year sentences on these convictions. *See* Iowa Code § 124.401(5) (1997) (possession of marijuana is serious misdemeanor punishable by imprisonment up to six months and $1000 fine). These particular judgments must be vacated and remanded for resentencing.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**